Here ye, here ye, this honorable court is now in session. The honorable William B. Holdridge presiding. Please be seated. Thank you. Counsel, you may proceed. Okay. I'm here on the Jack Carter case. My name is Gerald Dunham. Good morning, Your Honor. The facts are, I think, very straightforward and I don't think there's going to be a lot of dispute about the facts. So what's the standard of review then? I agree with you totally. If the last day that my client worked in the coal mines was September 24, 2004, he didn't file his application for adjustment claim until September 3, 2004, beyond the three-year statute of limitations. That was his day of last exposure. I think we can assume for purposes of the record that was his day of disablement as well. And I want to get into a little bit about the way that this disease process is diagnosed. You have, as Dr. Mayer points out, and it's also discussed in the briefs, there's a restrictive impairment that miners can sustain and suffer as a result of exposure to coal dust. This can be seen on a bead reading chest x-ray, but it can also be seen diagnosed on a pulmonary function test exam. Can I ask a question about this? Certainly. Did Dr. Mayer testify that CWT was a restrictive impairment whereas COPD was an obstructive impairment? His report, I don't know that he provided an affidavit, but that's the substance of his report. So the diseases are different? Well, the disease process is different in the sense that the restrictive impairment is an attack on the lung tissue itself. It's demonstrated in terms of nodules on the x-ray examination that prevents the blood gas exchange at that particular site. COPD can take the form of emphysema or chronic bronchitis, which basically, as Dr. Mayer points out, can result frequently in an air-trapping process. So it's obstructive in nature as opposed to restrictive. Exactly. So if he concedes, and I think he does, that they are different disease processes, then why should the statutory reference to CWP be interpreted to include COPD? Well, because, Your Honor, the example I give in the brief, man sustains an accident, personal injuries. His lung is damaged and his kidney is damaged, for example. Nobody would suggest, I think it would be wholly irrational, I think there would be equal protection problems to say that for the same accident, the same causative agent, that the statute of limitations for the lungs is three years, the statute of limitations for the kidney is two. And that's essentially what's happened. There's been no showing in here. And in fact, I think Dr. Mayer goes ahead at great length. The damage, it's the same body part that's being damaged. The disease processes are severe. They are potentially disabling their potentially life. Well, it may be the same body parts, but it's different conditions. How does this help you on the equal protection argument if your expert says, concedes it's different conditions, as you've tacitly acknowledged? He said it's different conditions. They're not the same. Well, in the same manner, the way that in my personal injury hypothetical, the damage to the kidney may have resulted in more severe, less severe different processes than the damage to the lungs. Well, statutes are presumed to be constitutional. I agree with that, Your Honor. And that's what I'm saying is I've made this argument all through, and I've said, I've asked, okay, give me a rational basis. Why it is that a coal miner that is suffering emphysema has to file within three years, whereas if the coal miner is suffering a restrictive impairment, he has five. You know, they argue the Shelton case. And that was a 1994 opinion of this court. And the miner was given 17.5% disability, man as a whole. You read that case, and virtually all of the medical testimony indicated that that miner had COPD. And it was the same argument as to whether or not the three-year statute or the five-year statute should apply. In fact, Ms. Intravaglia's law firm was in that case. And this court basically said that the five-year statute. But what's very interesting about that case is when this court remanded the case back, there wasn't any instruction in the case saying, okay, there's some evidence that there's a restrictive impairment. There's other evidence that he has COPD. Clearly, the COPD portion of the claim was filed after the three-year statute limitations. And they sustained the 17.5% award, man as a whole. They didn't say, we want you to parse out that portion of the claim that was restrictive from that portion of the claim that was COPD. But in a tort case, if you have an indivisible injury, we don't ask anybody to parse it out if it can't be done. Now, do you think it's actually possible if a person has both COPD and CWP to parse out what his disability is from one as opposed to another?  And so are we going to have a standard that says something like this, where the minor's claim is partially restrictive and partially obstructive, he gets a full recovery. Whereas if his whole claim is only obstructive, he gets no recovery at all. Well, on state's limitations grounds, because in this particular case, I think the evidence reflects that all the doctors specifically found he did not have CWP. He did not have pneumoconiosis. There was a 0-1 x-ray reading in Dr. Hauser, which is a negative, that's a negative reading. Now, the other question I have for you, the equal protection argument you make, it appears to me was first made in a motion to reconsider before the trial court. That is correct. So tell us why we shouldn't find it was forfeited. Why we shouldn't find that it was forfeited because you had erased it before the administrative body or before the trial court prior to a motion to reconsider? You know, I was afraid somebody was going to ask that question. And your answer would be? I mean, we don't have to accept that it's forfeited. We can take the issue. And that's my point, Your Honor. Your Honor, I think the logic, I mean, number one, I have enough trouble with, you know, basic statutory arguments before the commission. Last time I tried some kind of novel constitutional argument, you know, I just got the glaze. But you do have the discretion. The limitation is on the parties, it's not a limitation on us, you're correct. You do have the discretion to look at this. And all I'm looking at is if they can't show a rational basis, okay, the disease processes are different. I can see that. But, you know, there's another point because I've been doing this for about ten years. And I get pulmonologists that disagree whether the disease process is restrictive. Some will say it's restrictive. Others will say it's obstructive. Some will say it's a combination of both. Others will say not. And when you have board-certified pulmonologists that are all over the map on these kinds of claims, and we're going to start parsing out the formula that you're suggesting, I mean, I think it's just a nightmare. Mr. Dunham, in terms of the five-year statute and its enactment, is there any legislative history that you can point to that would support your argument? We looked, and frankly, it's not very helpful. I noticed that the respondent in their brief suggests a rational distinction would be, well, emphysema, of course, can be caused by exposure to cigarettes. My man, he was a cigarette smoker. And so maybe that's a basis. But there's really nothing in the legislative history that we could find. I'll tell you what I think happened here, and I think Dr. Mayer does a very good job laying it out. There was a school of thought back in the 70s and 80s that said coal dust damage is a result of emphysema. You do not make that diagnosis unless there is also radiographic evidence of classic CWP. And that was the point of view that reigned, I think, was forcefully advanced, and it may have been that was something that the legislature embraced because they didn't think, absent the radiographic evidence, there couldn't be emphysema as a result of workers, as a result of exposure to coal dust. But as Dr. Mayer points out, I mean, the Department of Labor, as Ms. Intervalia knows, very long preamble made substantive findings about this and basically says, yes, you can have emphysema as a result of exposure to coal dust without any radiographic evidence of CWP. And so the whole point of what the legislature was probably thinking back when the statute was first passed, scientifically, there's no basis for it. So now you have the problem with the rational basis. Also, in making the argument, I mean, sometimes we have to look to the broad perspective and all the implications and possibilities. The five-year statute of limitations applies only to CWP, correct? All the other conditions are under the three years, is that right? Just to summarize it? Without conceding what CWP means. Right, but that's the intent of the legislature. That is correct. Now, who does it favor? The five-year statute of limitations for CWP cases, who does that favor? The coal miners. Right. So could the legislature turn around and make it three years? Would that be fair? I think for claims that are filed after, I mean, they can't reach back and deprive a miner of a claim. Sure, sure. I mean, we see changes in the statute of limitations all the time. Has anyone explored how long after one actually contracts CWP or COPD do the symptoms actually appear so that one would recognize it? Is it longer for CWP than it is for COPD? That's a very good question, Your Honor. It's been recognized, I think, in the literature that this disease is blatant and progressive. And the reason is, is because unlike the toxins in cigarette smoke, the toxins in the coal dust can actually remain in the lungs and no disease process develops until years afterwards. So can the logic for the difference? It's the same for either disease process. It's the same for either disease? Yes. Does it say, could the logic be that the latency period for CWP is much longer than it is for COPD? I don't believe. I'm not a pulmonologist. I'm just offering my opinion. I'm sure that Ms. Entrevallia is going to get up here and offer a different medical opinion. You mean she's not going to agree with you? I doubt it. We very rarely agree about anything other than she's a nice lady, but I don't know what she says about me. But I'll concede that she's a nice lady. And this is all being taped, so she'll have that to refer to in future cases. Remember those nice comments. I think if we went back and researched, if I asked Dr. Mayer that specific question, I'm confident he's going to say it's latent and progressive for both. Okay, he might say that. What about the record as it stands? Is there any evidence in this record that it takes longer, the latency period is longer for CWP as opposed to COPD? I think Dr. Mayer in his report does use the phrase latent and progressive. But if I recall, I'm not sure that he specifies whether it applies to both disease processes or one or the other. So I can't make that representation. Counsel, so as we know, your expert, Dr. Mayer, says that CWP and COPD affect different parts of the lung for different conditions. So tell us succinctly why that would not be a rational basis for applying a different statute of limitations. Different conditions, different parts of the body. Both are very, very, it's a dangerous disease. Both can kill. And I'm back to where I started. If you've got an injury to the kidney and the lungs, completely different body parts, it seems to me that there's no rational reason for saying that the statute of limitations shouldn't be the same for both. There's no rational basis for their opinion. Yeah, we don't know the legislative history as we stand here today, right? We looked. And it's not helpful. I see my light is on. It's the yellow one. When the red goes, you're... Oh! Right now it's just a subtle hint. Okay. You can still go through the intersection. But you don't have to use it. Well, I just want to make this point because I'm not sure I made it carefully enough. There's too much of a disagreement about the disease processes themselves. And my hypothetical about the kidney and the lungs, that's obvious. But when you've got pulmonologists that can't agree whether this is restrictive, this is obstructive, whether it's a combination of both, I don't think there's any choice but to apply the same statute of limitations to both. Okay. Thank you, Mr. Dunham. Ms. Intervallia, you may respond. After that wonderful introduction, Ms. Intervallia, you may proceed. May I please support? I'm Mr. Wonderful Dunham. My name is Cheryl Intervallia. I'm here on behalf of Old Bend Coal Company. And the issue is the statute of limitations under the Occupational Disease Act. There's a general statute that says it's three years for everybody except for three separate cases. One is coal miners pneumoconiosis. The second one is exposure to radiation. The third one is exposure to asbestos. If the legislature had intended to do exactly what Mr. Dunham has suggested, they very easily could have put exposure to coal dust, not coal miners' pneumoconiosis. Now, with that said, you know, maybe back when they entered that in 1973, they thought coal workers' pneumoconiosis was just the disease and that was the only thing out there. That's very possible. The DOL did find that you could have obstructive, which they created this legal pneumoconiosis in 2001. Our legislature has not adopted the DOL's definition for pneumoconiosis. They've had 13 years at this point to do so. They haven't. It's their job. If they want to expand the category, that's their job. Your job is to read it as it's written and decide if this is ambiguous. And I think even Mr. Dunham has to concede the word coal miners' pneumoconiosis is not ambiguous. If you go back and look at all the case law that we've had since that statute's been enacted, we have cases where there is coal workers' pneumoconiosis. We have cases where there's COPD. We have cases where they're both. And we don't worry about, oh, he's only going to get paid for pneumoconiosis. He's not going to get paid for COPD. FITS took care of that. In 1994, they said, we are going to look at the total impairment regardless of the cause, and if pneumoconiosis was a portion of that cause, he's going to get paid for all of it. And that's what our Supreme Court said in 1994. So we don't have this issue of, well, he's not going to get paid for this. What we have are two different disease processes. And if COPD was only caused by coal dust, then maybe there would be a reason to put it in with coal miners' pneumoconiosis. But COPD gets caused by a lot of different things. You know, it could be smoking. You can have people working in a factory that are exposed to chemicals. So are those people only going to get it for three years, but the people who work in the mines are going to get it for five? Now we have a whole other disparity issue with people who have the same disease that's having different statute of limitations. But clearly the legislature intended, I think, obviously, there would be different statute of limitations for COPD and CWP. But so succinctly, what's your response to his argument? Okay, that's all well and good, but, you know, is there a rational basis for applying two different statute of limitations? Why not make it just one? I think so. Basically, coal workers' pneumoconiosis is diagnosed by looking at a chest film or by autopsy, which by then it doesn't really matter at that point. But it takes a while for those opacities to develop and be seen on the chest x-rays. And they do primarily present with restrictive conditions. But the restriction usually doesn't come until you have enough opacities to have it affect your impairment. There have been numerous cases where they have pneumoconiosis, but it really hasn't affected their breathing yet. Conversely, in COPD, it is an obstructive condition by definition. That disease is diagnosed by pulmonary function studies. So we're not dealing with an x-ray now. We're dealing with people going in and taking breathing tests. COPD, though, when you're talking opacities, you're talking about basically little cavities. Am I correct, roughly, in the lung? It's basically fibrous tissue. Fibrous tissue that actually may actually contain coal dust. It does in pneumoconiosis cases, yes. And basically it's the dust that is being eaten by the lung. Ergo black lung. Right, right. COPD, you don't see that. In other words, what is it with the fibers, as you understand medically, that's going on? With COPD, you end up with a hole. With CWP, you end up with more of a lesion-like mass that can then grow bigger. In response to one of the questions that you asked Mr. Dunham, which he said that I would come to a different conclusion on, he's correct. Latent and progressive diseases. How long does it take for these diseases to develop? How long does it take us to find out what they are? This was discussed in the National Mining Association case, which was the case that went up when they amended the regulations under the DOL standard. And at that point, when they had oral argument in front of the D.C. Circuit, the director, the solicitor's office, basically conceded that latent and progressive pneumoconiosis is extremely rare and it is limited primarily to the people who have PMF, progressive massive fibrosis, complicated pneumoconiosis. That's where it's seen. Now, we all know that pneumoconiosis, typically the pulmonologists agree, you have to be in the mine 10 years. This guy was in the mine for 22, so there's no dispute that he was in there in that time period. But they don't necessarily know that they have it when they leave. And so that, I think, is the reason why you have an additional two years for these people to see if it develops beyond everybody else's three years. I mean, asbestosis got 25. Radiation got 25. I mean, I don't know why they would have picked five. I just think that possibly it was the radiological diagnosis. You're saying then, in summary, that because it takes longer perhaps to have objective medical evidence of CWP, the legislature was trying to be fair to the co-workers and say, hey, you know, it may be a little bit longer to get these x-rays that will verify that, so we're going to make it a little bit longer. Is that the rational basis? I find that to be a very rational basis because it takes a while for it to develop. And it is a slow disease, without a doubt. And by giving them five, if they've been out for five and they've got five and it finally shows up, I mean, we've seen numerous cases in the appellate court that have been published that show, you know, they don't have a positive chest film until they're four and a half years out. You know, and then the doctor, you know, there is no film in that two year, but the doctor's like, well, he probably had it back then, but you couldn't see it. I mean, we've seen them. They're out there. So, I mean, to me that's a rational basis. I don't know that we need to argue the rational basis, though, in all honesty, because the statute says what the statute says. And nobody can argue that it's ambiguous. Coalworker's pneumoconiosis is a disease in and of itself that is recognized in the medical community separate and apart from COPD. You have to get to the rational basis. If we get to the equal protection argument, then it becomes relevant. The waived forfeited. If we hold it's not forfeited, if we reach it, then you've got to talk about the rational basis of this argument. I think from a rational basis standpoint, I don't see how you can say that coal dust that caused COPD should be given a longer statute of limitations than COPD that's caused by exposure to a chemical or exposure to a dust in a brake factory. Well, let me interrupt you there for a moment. Now you're going to get really into picking different classifications. In order to be able to argue that rational basis, that it takes longer for the CWP to become apparent or be diagnosable, you have to have evidence of that somewhere in the record or in the legislative history or somewhere. Now you talked about a D.C. Circuit opinion, but is there anything, first, in this record, evidence that suggests or supports this statement? No. Okay. Not at all. And it still surprises me that the legislation that added two years to the statute of limitations to make it five years contains no support or rationale as to why an additional two years would be appropriate. But that's the case? As far as I know it is. And to be honest, I'm equally surprised, because when our state came out with it, it was right after the federal came out with theirs, and they pretty much followed it along the same path. It was three years when the federal black loan first came out. So I don't know why Illinois decided to make it five instead of three. Better lobby? Probably. But, you know, with that said, it makes sense if you have to diagnose it by film, because it has to reach a certain level and a certain classification. You have a certain number and certain areas of the loans for it to reach the level where people agree that it's pneumoconiosis. And that's how you get the one slash O. I asked your point, the question about the latency period and which one is found earlier. I'm not so much concerned about which one is found earlier by doctors. I am concerned with is there any evidence, any medical evidence or treatises that talk about which one an individual would recognize as being a disease in themselves earlier? I mean, does one experience the effects of COPD faster than one experiences the effects of CWP? There is literature out there. It's not part of our record, obviously. But if you look at COPD, you have your shortness of breath, you have all of your usual symptoms, you go in, you get the PFTs, it's showing that your FED1 is higher than your FDC, or lower than your FDC. It's an easily made diagnosis, just looking at the numbers when you go in and do it. Well, the triggering I take on COPD is shortness of breath. Yeah, but you're not going to see that as much with CWP unless the opacities have reached the size and level and classification necessary to reach the positive finding, which in most cases those are simple and they don't always have pulmonary impairment either. So I think in theory it's much easier to diagnose and recognize an obstructive condition than you are pneumoconiosis because they have such strict standards to say you have it. You have the number of opacities in all the right places, you've got it. Whereas obstruction is simply its values. It's a math problem. Do you have any other questions? I don't think there are. Thank you, Counsel. Well, since we're deviating from the record, I don't think that Cheryl will disagree. I mean, there are cases where pulmonologists have said that a miner can go back and work in the mine if he's got a 1 over 0 positive x-ray, but it's not a sufficient magnitude, and I'll let him go back and work. Once you've got a diagnosis of COPD as a result of exposure to coal dust, every pulmonologist I've ever talked to has said don't go back and work in the mines. And the COPD, it's a very gradual disease process, but it never gets better. It's either going to be maintenance or it's going to get worse. You know, she said that Illinois took the same path as the federal when we promulgated our statute. Of course, the feds understood that the disease processes are sufficiently similar that they expanded their definition. Ultimately, I think there's two points I want to make before I sit down. What is the definition of co-worker's pneumocloniosis? Dr. Mayer says, essentially, it's two different disease processes, but they fit within the same category. There is no statutory definition in Illinois with the federal statutes, correct? That is correct, Your Honor. And my other point is, just so I think everybody understands, but I'll feel bad if I don't make it again, and that is this. If we have a miner in Illinois that's got both a restrictive impairment and an obstructive impairment, he files within five years. After three years, he gets the full value of his claim. Whereas, if he only has an obstructive impairment, he gets no value on his claim at all if you embrace the reasoning of the circuit court. Thank you. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement, and a written disposition shall issue.